UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AALIYAH JOHNESE,<br><br>Plaintiff,<br><br>v.<br><br>STARBUCKS CORPORATION,<br><br>Defendant. | Case No. 19-cv-04797-HSG<br><br>**ORDER ON MOTION TO COMPEL**<br><br>Re: Dkt. No. 19 |

Pending before the Court is Defendant's motion to compel arbitration and dismiss or stay the action. *See* Dkt. Nos. 19 ("Mot."), 25-1 ("Opp."), 26 ("Reply"). The Court held a hearing on the motion for summary judgment on January 23, 2020. Dkt. No. 27. For the reasons provided below, the Court **GRANTS** Defendant's motion to compel arbitration and **STAYS** the action.

## I. BACKGROUND

Plaintiff Aaliyah Johnese filed this action against Starbucks Corporation ("Defendant" or "Starbucks") on June 19, 2019, in San Francisco Superior Court. Dkt. No. 1-2 ("Complaint"). Plaintiff brings a wrongful termination suit, alleging eight causes of action: (1) discrimination based on disability; (2) failure to engage in timely interactive process; (3) failure to accommodate; (4) retaliation; (5) aiding and abetting discrimination; (6) failure to prevent discrimination; (7) wrongful termination; and (8) unfair business practices. *Id.* Defendant removed the case on August 14, 2019. Dkt. No. 1.

According to the Complaint, Plaintiff was hired by Defendant in May 2016 to work as a Barista at Defendant's 398 Market Street San Francisco location. Complaint ¶ 18. During her employment, Plaintiff requested intermittent leave in order to obtain medical treatment between late 2016 and June 2017. *Id.* ¶¶ 21–22. Defendant's store managers Katie Blake and Megan Bartholomew failed to engage in an interactive process and discuss appropriate accommodations

with Plaintiff; instead, they responded with verbal and written discipline for missing work shifts on the days that Plaintiff had requested time off for treatment for her medical condition. *Id.* at ¶¶ 22–26. Defendant's managers further requested medical information regarding Plaintiff's condition and terminated Plaintiff before she was able to provide additional documentation. *Id.* at ¶ 27. Plaintiff was terminated on June 15, 2017. *Id.*

## II. LEGAL STANDARD

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, establishes that a written arbitration agreement is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983) (noting federal policy favoring arbitration). When a party moves to compel arbitration, the court must determine (1) "whether a valid arbitration agreement exists" and (2) "whether the agreement encompasses the dispute at issue." *Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004). The agreement may also delegate gateway issues to an arbitrator, in which case the court's role is limited to determining whether there is clear and unmistakable evidence that the parties agreed to arbitrate arbitrability. *See Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015). In either instance, "before referring a dispute to an arbitrator, the court determines whether a valid arbitration agreement exists." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 530 (2019) (citing 9 U.S.C. § 2).

When the parties contest whether an agreement was formed, the court applies "general state-law principles of contract interpretation," without a presumption in favor of arbitrability. *Goldman, Sachs & Co. v. City of Reno*, 747 F.3d 733, 742 (9th Cir. 2014) (internal quotation omitted). The party seeking to compel arbitration bears the burden of proving by a preponderance of the evidence that there was an agreement to arbitrate. *Norcia v. Samsung Telecomms. Am., LLC*, 845 F.3d 1279, 1283 (9th Cir. 2017). Conversely, the party opposing arbitration is entitled to the benefit of all reasonable doubts and inferences. *Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*, 925 F.2d 1136, 1141 (9th Cir. 1991). Therefore, a court may find that an agreement to arbitrate exists as a matter of law "[o]nly when there is no genuine issue of fact

2

concerning the formation of the agreement." *Id.* (internal quotation omitted); *see also Alarcon v. Vital Recovery Servs., Inc.*, 706 F. App'x 394, 394 (9th Cir. 2017) (same).

**III. ANALYSIS**

Defendant argues that Plaintiff is bound by an arbitration agreement, which requires arbitration of any claims related to Plaintiff's employment with Starbucks. Mot. at 6–12. Plaintiff responds with two primary arguments: first, Starbucks cannot prove that Plaintiff signed the arbitration agreement, and second, even if Starbucks could prove that Plaintiff signed the Agreement, it is unconscionable. Opp. at 7–14.[1] In order to address each argument, the Court first details Starbucks' application and hiring process.

**A. Arbitration Agreement**

Kathryn Daly, director of recruiting for Starbucks, submitted a declaration explaining the application and hiring process across Starbucks. *See* Dkt. No. 19-5 ("Daly Decl.").[2] Beginning on October 1, 2014, Starbucks required as a condition of employment that new hires agree to arbitrate any and all claims related to their employment. *Id.* at ¶ 3. Between October 1, 2014 and on or about May 15, 2017, Starbucks also required that applicants for retail, non-managerial positions apply through an online system called Retail Hourly Hiring ("RHH"), which Plaintiff used when she applied on May 5, 2016. *Id.* at ¶¶ 2, 5. To apply, the RHH system requires an applicant to

---

[1] Although Plaintiff suggests that Defendant has not met its burden to establish that the FAA applies, her arguments are mistaken. Opp. at 5–6. FAA's "involving commerce" requirement is interpreted broadly, and here, where Plaintiff worked for Defendant, a multi-state business, that requirement is met. *See Allied-Bruce Terminix Companies, Inc. v. Dobson*, 513 U.S. 265, 276–77 (1995). Additionally, neither California Labor Code 229 nor AB 51 affects this case. *See Lane v. Francis Capital Mgmt. LLC*, 168 Cal. Rptr. 3d 800, 808 (Cal. Ct. App. 2014) ("[S]ection 229 is limited to actions for the collection of due and unpaid wages brought under sections 200 through 244; section 229 does not apply to all statutory wage and hour claims"); *Chamber of Commerce of the United States et al. v. Becerra et al.*, No. 2:19-cv-02456, Dkt. No. 24 (E.D. Cal. Dec. 30, 2019) (granting a temporary restraining order enjoining enforcement of AB 51).
[2] Plaintiff improperly raises evidentiary objections to Daly's declaration, as well as that of Sandi Loftus, the partner resources manager at the San Francisco store where Plaintiff worked. Opp. at 4 (citing Dkt. Nos. 19-5, 19-11). Both declarants provide evidence sufficient to support a finding that they have personal knowledge about the topics discussed. Daly is familiar with Starbucks' hiring policies and practices through her position as director of recruiting at Starbucks. Daly Decl. ¶ 1. Similarly, Loftus is familiar with the onboarding process through her position as a manager at the store where Plaintiff worked. Dkt. No. 19-11 at ¶¶ 2–3. That neither of these individuals has personally met Plaintiff does not affect their ability to provide evidence about Starbucks' hiring policies generally. Plaintiff's objections are **DENIED**.

create a user account to access the application, by entering a username, password, and the applicant's email address. *Id.* at ¶¶ 5, 6. It then directs the applicant to a "Pre-Application Disclosures" page, which includes the following disclosure: "It is Starbucks policy that after October 1, 2014, all new hires shall be subject to an arbitration agreement as a condition of employment." *Id.* at ¶ 6. Applicants are required to click a button at the bottom of the page that states "I consent to receive and respond to notices in electronic form." *See* Dkt. No. 19-6, Exhibit B.

Once an applicant is offered a position, Starbucks requires the now prospective employee to again use the RHH system, this time to complete "Employee Onboarding." Daly Decl. at ¶ 12. The user is presented with an "Electronic Consent" page that gives him or her an option between consenting to receive and respond to information in electronic form or to close the browser window and cancel the process. *Id.* at ¶ 13; *see also* Dkt. No. 19-6, Exhibit D. The system does not permit proceeding to the next page without consenting. Daly Decl. at ¶ 13. Later, the RHH system also presents an "e-Signature Acceptance" page which states:

> I agree to sign these electronic PDF documents using "click" signature technology . . . I intend both the signature I inscribe with the "click" signature technology and the electronic record of it to be my legal signature to the document.

Dkt. No. 19-6, Exhibit F. Again, a user cannot proceed to the next page unless he or she clicks a box stating, "Check here to agree." Daly Decl. at ¶ 16. Thereafter, the user is directed to the "e-Sign Forms" page which requires the user to review his or her I-9 and W-4 forms, as well as Starbucks' Arbitration Agreement ("Arbitration Agreement" or "Agreement"). *Id.* at ¶¶ 17–18. A user can either sign each of the forms individually or use the "Sign All" link once he or she views all the forms, including the Arbitration Agreement. *Id.* Once a user signs the form, the RHH system automatically generates an email to the email address on file with a copy of the Agreement. *Id.* at ¶ 20.

The Arbitration Agreement provides:

> Starbucks and I agree to use binding individual arbitration to resolve any "Covered Claims" that arise between me and Starbucks, its subsidiaries and related companies, and/or any current or former employee of Starbucks or a related company (collectively,

4

> "Starbucks"). "Covered Claims" are those brought under any statute, local ordinance, or common law relating to my employment, including those concerning any element of compensation, harassment, discrimination, retaliation, recovery of bonus or relocation benefits, leaves of absence, accommodations, or termination of employment.

Dkt. No. 19-6, Exhibit H. It further provides that each party will pay its own attorneys' fees and costs, the parties will engage in limited discovery, and the parties shall attempt to agree on a mutual arbitrator. *Id.*

### B. Signature

Plaintiff first argues that Defendant fails to produce evidence that shows the parties agreed to arbitrate. Opp. at 7–8. Plaintiff notes that she "does not believe the arbitration provision was ever presented to" her during the hiring process and that the first time she "saw it was [July 23,] 2019." Dkt. No. 25-3 ("Johnese Decl.") at ¶ 20. "In California, [g]eneral principles of contract law determine whether the parties have entered a binding agreement to arbitrate." *Pinnacle Museum Tower Assn. v. Pinnacle Mkt. Dev. (US), LLC*, 282 P.3d 1217, 1224 (Cal. 2012). "The party seeking arbitration bears the burden of proving the existence of an arbitration agreement." *Id.* To show that Plaintiff entered into the arbitration agreement with Starbucks, Starbucks provides the following evidence. First, Defendant provides Plaintiff's application filled out through the RHH system. *See* Dkt. No. 19-6, Exhibit C. The application includes personal details including Plaintiff's address, social security number, telephone number, and birthdate, all of which would have required Plaintiff's participation to enter. *Id.* The application also indicates that Plaintiff viewed the Pre-Application Disclosures, which specifically noted that "[i]t is Starbucks policy that after October 1, 2014, all new hires shall be subject to an arbitration agreement as a condition of employment." *Id.* Second, Defendant provides evidence of Plaintiff's onboarding forms submitted through the RHH system. *See* Dkt. No. 19-6, Exhibit I. Again, the onboarding forms include personal details that Plaintiff provided such as emergency contacts. Dkt. No. 19-6, Exhibit E. They further indicate that Plaintiff viewed and signed the Arbitration Agreement on May 23, 2016 at 10:47 a.m. *Id.* Finally, as indicated in Ms. Daly's declaration regarding typical procedure for the RHH system, Starbucks' email history shows automated emails sent to Plaintiff, including one sent on May 23, 2016 with the subject line "Starbucks Mutual Arbitration

Agreement." Dkt. No. 19-6, Exhibit J. The Court finds that this evidence establishes a valid signature by a preponderance of the evidence. Other courts have similarly found that such evidence is sufficient to establish that plaintiff's electronic signature was valid. *See e.g.*, *Rezaeian v. Starbucks Corp.*, No. 2:16-cv-04599-JAK (ASx), Dkt. No. 21 (C.D. Cal. February 8, 2017) (finding the same evidence regarding Starbucks' RHH recruiting system established a valid signature); *Gonzalez v. Ceva Logistics U.S., Inc.*, No. 16-cv-04282-WHO, 2016 WL 6427866, at *3 (N.D. Cal. Oct. 31, 2016) (finding that defendant "offered adequate evidence that only [plaintiff] could have filled out this form, that the document could not have been altered after it was submitted, and that [plaintiff] herself signed the arbitration agreement" through a declaration of a human resources director detailing the electronic hiring process); *accord Horne v. Starbucks Corp.*, No. 2:16-cv-02727 (MCE) CKD, 2017 WL 2813170, at *1 (E.D. Cal. June 29, 2017) (describing a substantially similar hiring process).

To the extent Plaintiff argues that an electronic signature is not enough, under California law "[a] record or signature may not be denied legal effect or enforceability solely because it is in electronic form." Cal. Civ. Code § 1633.7(a). As part of the onboarding forms, Plaintiff specifically consented to "click" signature technology, and stated that she "intend[s] both the signature . . . and the electronic record of it to be [her] legal signature to the document." Dkt. No. 19-6, Exhibit F. This, in addition to Starbucks' evidence that Plaintiff received a notification that Starbucks required new hires to sign an arbitration agreement during the application process, viewed and consented to the agreement during onboarding, and was sent an electronic copy of the agreement, establishes that the "electronic record or electronic signature is attributable to [Plaintiff] because] it was the act of [Plaintiff]. Cal. Civ. Code § 1633.9; *see also Mikhak v. Univ. of Phoenix*, No. 16-cv-00901-CRB, 2016 WL 3401763, at *6 (N.D. Cal. June 21, 2016) ("Electronic signatures and clicking 'Accept' are valid means of expressing assent to a contract.").[3]

At the January 23, 2020 hearing, Plaintiff's counsel made a new argument that Plaintiff only filled out written paperwork, and that a manager might have completed the RHH system

---

[3] The Court need not reach the remainder of Defendant's argument since the evidence shows by a preponderance that there was an agreement to arbitrate. *See* Mot. at 9–11.

prompts for the application and onboarding forms. However, zero evidence of this claim has been presented in support of this claim. In Plaintiff's declaration, she states that she "recall[s] filling out some paper work, and doing some online training," but later implicitly concedes that she used the RHH system even though she cannot confirm that the screenshots that Defendant provides for evidence are "the exact screen[s that she] saw." Johnese Decl. at ¶ 2, 8. No evidence supports counsel's new argument.

Accordingly, the Court finds the evidence Starbucks submitted sufficiently establishes that Plaintiff electronically signed the Arbitration Agreement.

### C. Unconscionability

Plaintiff next argues that even if the Court determines that an agreement to arbitrate did exist, the Agreement is nonetheless unenforceable on unconscionability grounds. Opp. 8–14. "Under California law, a contract must be both procedurally and substantively unconscionable to be rendered invalid." *Chavarria v. Ralphs Grocery Co.*, 733 F.3d 916, 922 (9th Cir. 2013) (citing *Armendariz v. Found. Health Psychcare Servs., Inc.*, 6 P.3d 669, 690 (Cal. 2000)). "Procedural unconscionability concerns the manner in which the contract was negotiated and the respective circumstances of the parties at that time, focusing on the level of oppression and surprise involved in the agreement." *Id.* Substantive unconscionability looks at whether the contract "is unjustifiably one-sided to such an extent that it 'shocks the conscience.'" *Id.* at 923. Because the Court finds that Plaintiff cannot show the Arbitration Agreement at issue here was substantively unconscionable, it need not address procedural unconscionability.

Plaintiff argues that the Arbitration Agreement is substantively unconscionable because it fails to provide a fair process for the selection of an arbitrator and provides extremely limited discovery. Opp. at 10–14. As to these two elements, the Agreement provides:

> **Selecting the Arbitrator.** The parties shall confer and attempt to mutually agree on an Arbitrator. If the parties cannot agree, the parties shall contact AAA and request that AAA provide the parties a list of nine arbitrators. The parties shall confer in person or by telephone and select the Arbitrator who will hear the Covered Claim from this list. The party demanding arbitration shall strike a name first, and then the responding party, alternating strikes until only one name remains, who shall be the selected Arbitrator unless he or she is unavailable or otherwise unable to serve.

> **Discovery of Evidence.** (i) Each party shall be entitled to three interrogatories in a form consistent with Rule 33 of the Federal Rules of Civil Procedure ("FRCP"). (ii) Each party shall be entitled to only 25 requests for production of documents in a form consistent with Rule 34 of the FRCP. (iii) Each party shall be entitled a maximum of two eight-hour days of depositions of witnesses in a form consistent with Rule 30 of the FRCP.

Dkt. No. 19-6, Exhibit H.

To be lawful, an arbitration agreement must "(1) provide[] for neutral arbitrators, (2) provide[] for more than minimal discovery, (3) require[] a written award, (4) provide[] for all of the types of relief that would otherwise be available in court, and (5) [] not require employees to pay either unreasonable costs or any arbitrators' fees or expenses as a condition of access to the arbitration forum." *Armendariz*, 6 P.3d at 682. The provisions detailed above do not run afoul of these requirements. While the selection of the arbitrator contemplates a mutual agreement on an arbitrator, it also provides a neutral procedure that fairly allows both parties to participate in the selection process. Although Plaintiff argues that Starbucks will receive special treatment because it is a repeat player, this is precisely the reason that arbitrators are required to "disclose to the parties any dealings that might create an impression of possible bias." *Commonwealth Coatings Corp. v. Cont'l Cas. Co.*, 393 U.S. 145, 149 (1968). Additionally, "a limitation on discovery is one important component of the simplicity, informality, and expedition of arbitration." *Armendariz*, 6 P.3d at 684 n.11 (citations and quotations omitted). The Agreement provides for limited interrogatories, requests for production of documents, and two eight-hour days of depositions of party and non-party witnesses. It further authorizes the arbitrator to allow either party to apply for additional discovery through a showing of "substantial need." The Agreement's discovery provisions thus meet the threshold required. *See Sanchez v. Carmax Auto Superstores California, LLC*, 168 Cal. Rptr. 3d 473, 478–80 (2014) (similarly upholding an agreement to arbitrate where it provided for less discovery than court procedures mandate when it allowed parties to apply to further discovery by showing a "substantial need."); *Horne*, 2017 WL 2813170, at *3 (holding the same for the Agreement at issue in this case).[4]

---

[4] Plaintiff's cited cases do not convince the Court otherwise. In *Ontiveros v. DHL Express (USA), Inc.*, the court found a restriction to two depositions did not allow adequate discovery. 79 Cal.

8

Plaintiff also argues that the Agreement is substantively unconscionable because it focuses only on limiting claims that an employee may bring, while Defendant "retains the unfettered right to file in civil court." Opp. at 11. The Court disagrees. The arbitration agreement specifically provides that covered claims "are those brought under any statute, local ordinance or common law relating to [an individual's] employment." Dkt. No. 19-6, Exhibit H. That it gives examples of discrimination, harassment, and other claims specific to an employee does not limit the Agreement to those claims. In fact, the Agreement contemplates an employee's initiation of arbitration, showing that both typical "employee" claims and typical "employer" claims are subject to arbitration. *Id.* Unlike the agreement in *Abramson v. Juniper Networks, Inc.* cited by Plaintiff, the Agreement does not have a carve-out for "claims . . . related to trade secrets, confidential information, and other intellectual property." 9 Cal. Rptr. 3d 422, 443 (Cal. Ct. App. 2004). It instead applies to claims brought under any law.

Plaintiff thus fails to show that the Agreement "shocks the conscience" or is substantively unconscionable. Accordingly, the Court finds the Agreement enforceable and "must compel arbitration of otherwise arbitrable claims." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 219, (1985).

//

//

//

//

//

---

Rptr. 3d 471, 486 (Cal. Ct. App. 2008). Here, the Agreement provides for two, eight-hour days of deposition in the aggregate, which could accommodate more than two depositions (depending on their length). Additionally, in *Baxter v. Genworth N. Am. Corp.*, the court faced a factually complex employment litigation involving an employee with a 12-year employment history with defendant. 224 Cal. Rptr. 3d 556, 568–70 (Cal. Ct. App. 2017). Plaintiff there identified a minimum of six percipient witnesses, and noted that documents "relating to family leave practices, evaluation policies, reorganization, prior complaints similar to [plaintiff's], communications concerning [plaintiff's] discipline and termination, and [defendant's] internal investigation, among others" would all be necessary. *Id.* at 569. There is no similar circumstance in this case—Plaintiff worked for Starbucks for less than a year and has only identified her two managers as percipient witnesses.

9

## IV. CONCLUSION

For the reasons noted above, the Court **GRANTS** Defendant's motion to compel arbitration. This action is hereby **STAYED** pending resolution of the arbitration. The parties shall file a joint report regarding the status of the arbitration proceeding 90 days from the date of this order, and every 90 days thereafter until that proceeding is concluded. The parties also are directed to jointly notify the Court within 48 hours of the conclusion of the arbitration proceeding. The clerk is directed to administratively close the case.

**IT IS SO ORDERED.**

Dated: 2/18/2020

_____
HAYWOOD S. GILLIAM, JR.
United States District Judge